E-FILED
Tuesday, 07 April, 2020 03:31:43 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTHONY BROWN,          )
   Plaintiff,            )
                     )
   vs.                 )      No. 18-1230
                     )
MAJOR PRENTICE, et. al.    )
   Defendants         )

SUMMARY JUDGMENT ORDER

This cause is before the Court for consideration of Defendants' motion for summary judgment on the issue of exhaustion of administrative remedies.[28]. For the following reasons, Defendants Timothy Gross, David Jenkins, and Susan Prentice's motion for summary judgment is granted. [28].

I. BACKGROUND

The *pro se* Plaintiff has three claims before the Court alleging: 1) Defendant Prentice violated his Eighth Amendment rights at Pontiac Correctional Center on November 28, 2017 when she put Plaintiff in a cell with no working toilet as well as feces and urine on the walls, floor, window, and door; 2) Defendant Prentice was deliberately indifferent to Plaintiff's serious mental health condition on November 28, 2017 when she refused to summon a crisis team after Plaintiff requested help and indicated he planned to hang himself; and 3) Defendants Gross and Jenkins were deliberately indifferent to Plaintiff's serious mental and medical condition on November 28, 2017 when they refused to get a crisis team and refused to provide medical care after Plaintiff injured himself. Plaintiff claims he broke his plastic eating

utensil and inserted it into his penis until it bled. *See* October 29, 2018 Merit Review Order.

The Court previously considered Defendants' motion for summary judgment on June 24, 2019.   The Court found Plaintiff had failed to exhaust after Plaintiff failed to file a response to the motion. *See* January 22, 2020 Case Management Order.

However, on January 22, 2020, the Court granted Plaintiff's motion to reconsider the dismissal of his case. *See* January 22, 2020 Case Management Order. The Court vacated the June 24, 2019 Summary Judgment Order and stated it would consider the response Plaintiff filed after the order was entered.  In addition, the Court gave Defendants time to file a reply. [39].

The Court will again consider the motion for summary judgment as well as Plaintiff's response and Defendants' reply. [28, 32, 39].

## II. LEGAL STANDARD

### A. SUMMARY JUDGMENT

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).   A movant may demonstrate the absence of a material dispute through specific cites to admissible evidence, or by showing that the nonmovant "cannot produce admissible evidence to support the [material] fact."  Fed. R. Civ. P. 56(c)(B).  If the movant clears this hurdle, the nonmovant may not simply rest on his or her allegations in the complaint, but instead must point to admissible evidence in the record to show that a genuine dispute exists. *Id.; Harvey v. Town of Merrillville*, 649

F.3d 526, 529 (7th Cir. 2011).  "In a §1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and thus must come forward with sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

At the summary judgment stage, evidence is viewed in the light most favorable to the nonmovant, with material factual disputes resolved in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists when a reasonable juror could find for the nonmovant.  *Id.*

B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act (PLRA) provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The Seventh Circuit "has taken a strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006); *Pozo, v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002)(prisoner must file complaints and appeals "in the place, and at the time, the prison's administrative rules require").

The Illinois Department of Corrections (IDOC) has an established grievance procedure for inmates. *See* 20 Ill. Admin. Code §§ 504.800 *et seq.*  For most complaints,

3

an inmate must first attempt to resolve his grievance with his counselor. 20 Ill. Admin. Code. § 504.810(a). If the issue remains unresolved, an inmate may then file his written grievance with the Grievance Officer within the 60-day says of the incident. 20 Ill. Admin. Code. § 504.810(a).

"The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer (CAO) within two months after receipt of the written grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code. § 504.830 (e). The Warden or CAO will then review the findings "and advise the offender of his or her decision in writing." *Id.*

If the inmate is still not satisfied with the response, the inmate can file an appeal with the Administrative Review Board (ARB) with 30 days of receiving the CAO's response. 20 Ill. Admin. Code. § 504.850 (a). The ARB will submit a report to the Director who will "make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code. § 504.850 (d)(e).

If an inmate fails to follow the grievance procedure rules, his claims will not be considered to be exhausted, but instead forfeited, and he will be barred from filing suit in federal court even if administrative remedies are for practical purposes no longer available to him due to his procedural default. *Pozo,* 286 F.3d at 1025.

### III. FACTS

Sharon Simpson has been the grievance officer at Pontiac Correctional Center since November of 2009. (Def. Reply, [39], Simp. Aff., p. 1). Simpson says on

4

November 1, 2017, the Illinois Department of Corrections (IDOC) began a Grievance

Receipt Pilot Program for submitting and recording grievances. (Def. Reply, [39], Simp.

Aff., p. 1). The rules for the program were posted at every mail box, displayed on the

facility television channel, were available at prison libraries, and were provided upon

request. (Def. Reply, [39], Simp. Aff., p. 1).

The Pilot Program required all grievances to be submitted in a "Grievance Only"

box. (Def. Reply, [39], Simp. Aff., p. 1).  This included emergency grievances and

grievances directed to a counselor or grievance officer.  If an inmate was confined to

segregation, staff members would bring the box to the front of each offender's cell once

a day and the offender could submit his grievance. (Def. Reply, [39], Simp. Aff., p. 2).

The grievance officer would then process every grievance submitted and log

each grievance. (Def. Reply, [39], Simp. Aff., p. 2).  In addition, any time any IDOC staff

member took action in the grievance process, the information was entered in the

grievance log and became a part of the inmate's Cumulative Counseling Summary.

(Def. Reply, [39], Simp. Aff., p. 2).  If no entry was made, then the grievance office did

not receive a grievance.

Plaintiff's three surviving claims allege Defendants placed him in an unsanitary

cell and denied him needed medical and mental health care on November 28, 2017.

Plaintiff submitted four relevant grievances concerning his claims.

Plaintiff submitted his first grievance to his counselor on December 6, 2017

complaining about the actions of Defendant Prentice. (Def. Mot., Ex. A)(Grv. No.

667658).  His counselor responded on December 13, 2017. (Def. Mot., Ex. A).  However,

Plaintiff did not send his grievance on to the grievance officer until February 27, 2018. Since Plaintiff alleged the incidents occurred on November 28, 2017, Plaintiff failed to send his grievance to the officer within the required 60-day time frame. (Def. Mot., Ex. C). Therefore, the Grievance Officer returned the untimely grievance to the Plaintiff noting it would not be addressed further. (Def. Mot., Ex. C).

On January 22, 2018, Plaintiff submitted his second grievance as an emergency complaining "C/O Groose'" refused to provide medical care or a crisis team when Plaintiff inserted a broken spork in his penis. (Def. Mot., Ex. B)(Grv. No. 68964).  On January 25, 2018, the Warden found the issue was not an emergency and the grievance should be submitted through the normal grievance procedure. (Def. Mot., Ex. B).

On January 26, 2018, Plaintiff's counselor also provided a written response noting the issue must be forwarded immediately to the grievance officer because it involved a medical issue.  In addition, the counselor advised Plaintiff there was no "Officer Groose" at the institution. (Def. Mot., Ex. B).

Plaintiff then submitted his January 22, 2018 grievance to the grievance officer on February 27, 2018.  The grievance officer sent the matter to the Health Care Unit for a response. (Def. Mot., Ex. B).

On April 3, 2018, the grievance officer found the issue was moot because Plaintiff had received medical care for his injury. (Def. Mot., Ex. B).  The officer again advised Plaintiff he appeared to have listed an incorrect name for "Officer Groose" and there were no other staff members with similar names. (Def. Mot., Ex. B, p. 1).

While his second grievance was still pending, Plaintiff filed a third grievance dated March 28, 2018, again complaining about his cell conditions and a lack of medical care. (Def. Mot., Ex. D).  The counselor returned the grievance on April 3, 2018.  To the extent Plaintiff was repeating claims already alleged against Defendant Prentice, Plaintiff was reminded his initial grievance was denied when he failed to submit it to the grievance officer within the proper time frame. (Def. Mot., Ex. D; *see also* Ex. A, (Grv. No. 667658)).   This grievance was also well outside the 60 day deadline.

Plaintiff was further reminded he already had a pending grievance concerning a lack of medical care.  As noted above, Plaintiff did ultimately receive a response to his medical grievance.

Finally, Plaintiff filed a new, fourth grievance directly with the ARB on April 10, 2018 complaining again about his cell conditions in April of 2017 and the failure of Defendant "Gross" to provide medical treatment.  (Def. Mot., Ex. E, p.  7).  Plaintiff noted when he filed prior grievances at Pontiac, he was told they were untimely and he spelled the officer's name wrong.  However, Plaintiff said he now had the correct spelling, and he wanted the ARB to address the issues. (Def. Mot., Ex. E).

The ARB received Plaintiff's grievance on April 13, 2018, but returned it to Plaintiff noting he had not submitted his grievance within the proper time frame because his allegations involved incidents which occurred on November 28, 2017. (Def. Mot., Ex. E, p. 6). Therefore, the ARB would not address the grievance further.

IV. ANALYSIS

Defendants Prentice, Jenkins, and Gross argue they are entitled to summary judgment because the Plaintiff did not exhaust his administrative remedies as required for any of his claims.

Defendants first argue Plaintiff failed to timely exhaust his administrative remedies against Defendant Prentice.  Plaintiff did file a grievance on December 6, 2017 and he received a counselor's response on December 13, 2017.  However, Plaintiff failed to appeal to the grievance officer within the required 60 day time frame.   Therefore, the Plaintiff was informed this grievance was not timely and would not be considered further.

Plaintiff says he was unable to exhaust his administrative remedies for his claims against Defendant Prentice because the grievance process was not "available" to him. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)("If administrative remedies are not 'available' to an inmate, then the inmate cannot be required to exhaust.")  Courts have found grievance procedures are not available if prison officials engage in "affirmative misconduct" to prevent the prisoner from pursuing his administrative remedies. *Dole,* 438 F.3d at 809 (remedies unavailable where prison officials "do not respond to a properly filed grievance"); *see also Thomas v. Reese*, 787 F.3d 845, 847–48 (7th Cir. 2015) (remedies unavailable where correctional officer tells prisoner that prisoner cannot file grievance when in fact prisoner can do so); *Kaba v. Stepp*, 458 F.3d 678, 686 (remedies unavailable where prisoner presents evidence that prison personnel have "denied [prisoner] grievance forms, threatened him, and solicited other inmates to attack him in retaliation for filing grievances"); *Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004)

8

(remedies unavailable where prison personnel prevent prisoner access to grievance forms).

In this case, Plaintiff says the procedures were unavailable to him because officers would not bring him the grievance box to submit his grievance concerning Defendant Prentice. Plaintiff says while he received the counselor's response on December 13, 2017, various officers refused to bring him the grievance box until February 23, 2017. Therefore, he was unable to timely appeal his grievance to the Grievance Officer.

However, in their reply, Defendants have provided grievance logs demonstrating Plaintiff did have access the grievance box during this time frame. (Def. Reply, [39], Simp. Aff., p. 12-13). Between December 14, 2017 and February 23, 2018, Plaintiffs submitted four grievances dated December 20, 2017; December 26, 2017; December 30, 2017; and January 24, 2018. In each case, Plaintiff submitted his grievance via the "Grievance Only" box. (Def. Reply, [39], Simp. Aff., p. 2).

Plaintiff has not pointed to any specific instances where he attempted to submit his grievance, nor any specific officers who refused to bring him the Grievance Only box. *See Schultz v. Pugh*, 728 F.3d 619 (7th Cir. 2013)(since prisoner failed to set forth specifics about why he was unable to exhaust, summary judgment for the defendants was proper); *Guenther v. Al-Shami*, 2014 WL 1767076, at *3 (N.D.Ind. May 2, 2014) (plaintiff has "offered only vague assertions, and an inmate must offer specifics about his attempts to exhaust to create a genuine issue of fact."). In addition, Plaintiff offers

no explanation for why he failed to appeal the grievance when he submitted four other grievances by using the Grievance Only box during the relevant time frame.

The Court typically cannot weigh conflicting evidence or make credibility determinations at summary judgment. *See Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  In this case, Plaintiff has presented no evidence he attempted to appeal his grievance, and his own grievances demonstrate he had access to the grievance box during the relevant time period. Consequently, Defendant Prentice's motion for summary judgment is granted.

Defendants next argue Plaintiff cannot demonstrate he exhausted his administrative remedies against Defendant Gross.  Plaintiff submitted an emergency grievance alleging a denial of medical care and naming Defendant "Groose" on January 22, 2018. (Def. Mot., Ex. B)(Grv. No. 68964).  The Warden immediately found the issue was not an emergency and Plaintiff's counselor advised Plaintiff he should submit the issue directly to the grievance officer.  Plaintiff was also advised there was no Officer Groose at Pontiac.

On April 3, 2018, the Grievance Officer indicated he had requested a response from the Health Care Unit.  The officer ultimate found the grievance was moot because medical staff verified Plaintiff had received medical care for his self-injury.  The

Grievance Officer again noted there was no Officer Groose at Pontiac, and he was not aware of any staff member with a similar name. Plaintiff did not appeal this finding to the ARB. Therefore, Defendants argue they are entitled to summary judgment because Plaintiff did not exhaust all available remedies.

Plaintiff again says Pontiac Correctional Center officials prevented him from exhausting his administrative remedies. First, Plaintiff notes he filed his grievance as an emergency and he was not required to refile his grievance through the normal grievance procedures. Nonetheless, Plaintiff failed to appeal the denial of his emergency grievance to the ARB within the required 30 day time frame. Therefore, Plaintiff did not exhaust his administrative remedies for his emergency grievance. *See Wilson v. George*, 2020 WL 951080, at *3 (S.D.Ill. Feb, 27, 2020)("Regardless of whether the grievance was processed in the normal manner or as an emergency, if the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board."). Plaintiff instead chose to resubmit his grievance through the normal procedures**.**

Second, Plaintiff says the Defendants prevented him from exhausting his administrative remedies when they continued to tell him there was no Officer Groose and they refused to investigate further or provide the correct spelling.

Regardless, the Plaintiff's complaint complained about a denial of medical care after he injured himself. The grievance officer asked the Health Care Unit to respond, and medical providers stated they had provided treatment, what treatment was

provided, and when it was provided.  Medical providers also indicated Plaintiff had no further medical issues. Based on this response, Plaintiff's grievance was denied.

The Grievance Officer did note there was no Officer Groose at the facility and he was unaware of a similar name based on reviewing a list of staff members.  However, the Grievance Officer was not responsible for conducting a further investigation particularly since Plaintiff had not provided a description of this Defendant even after his counselor told him there was no Officer Groose at Pontiac.

Plaintiff has failed to explain why he did not appeal this grievance to the ARB. Whether or not Plaintiff identified the correct last name, Plaintiff had identified his claims and the grievance officer responded to Plaintiff's specific complaint. Furthermore, Plaintiff failed to explain why he did not file an amended grievance once he discovered the name since the grievance procedures allow extra time for good cause shown. 20 Ill. Admin. Code § 504.810(a).

In short, Plaintiff did not follow the available grievance procedures when he failed to appeal his emergency grievance to the ARB, and when he chose to file his grievance through the normal grievance procedures, Plaintiff again failed to appeal to the ARB.  Defendant Gross's motion for summary judgment is granted. *See Jones v. Bayler*, 2019 WL 7938530, at *3 (C.D.Ill. May 28, 2019)(if emergency grievance is denied, prisoner must either appeal warden's response to the ARB, or refile through regular procedures and complete this process).

Finally, Defendants argue Plaintiff failed to exhaust his administrative remedies for Defendant Jenkins.  None of Plaintiff's grievances mention this Defendant by name

or other description.  Plaintiff concedes none of the grievances before the Court

mentioned Defendant Jenkins.  However, Plaintiff now says he submitted another

grievance sometime in February of 2018, but his counselor failed to respond.  Therefore,

Plaintiff again argues the grievance process was not available to him.

Plaintiff does not provide any further details.  He does not provide a copy of the

grievance, nor does he specify when it was submitted, or how it was submitted.

Plaintiff does not even explain what was contained in the grievance. *See Schultz,* 728

F.3d 619 (7th Cir. 2013)(summary judgment proper because prisoner failed to set forth

specifics about why he was unable to exhaust administrative remedies); *Michas v. Health*

*Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir. 2000)("neither the mere existence

of *some* alleged factual dispute between the parties, nor the existence of some

metaphysical doubt as to the material facts, will defeat a motion for summary

judgment.")(emphasis in original)(internal quotations omitted); *Guenther,* 2014 WL

1767076, at *3 (plaintiff must offer more than "vague assertions" and instead must

provide "specifics about his attempts to exhaust to create a genuine issue of fact.");

*Cullins v. Nelson*, 2010 WL 1930122, at *1 (N.D.Ill. May 13, 2010)( "a party cannot defeat

summary judgment by relying on unsubstantiated facts...");*see also Dale v. Lappin,* 376

F.3d 652, 655–56 (7th Cir.2004) (plaintiff who offered concrete details in a sworn

statement submitted enough to defeat summary judgment, whereas vague assertions

are not sufficient to create a genuine issue of fact on exhaustion issue).  In addition,

there is no record of any additional, relevant grievances submitted in the Grievance

Only box.

More important, Plaintiff was required to do more when he did not receive a response from his counselor. Plaintiff was still required to submit a written grievance to the Grievance Officer within 60 days. *See  Wilborn v. Ealey*, 881 F.3d 998, 1005 (7th Cir. 2018)("Under the regulations in effect then, we have clearly held, an Illinois inmate must submit his grievance to a grievance officer, not only to a counselor, by the (60 day) deadline."): *Jackson v. Shepherd*, 552 Fed.Appx. 591, 592 (7th Cir. 2014) (plaintiff "did not need a response from his counselor to move forward with his grievance."); *Smith-Vasquez*, 658 F. Supp. 2d 865, 874 (S.D. Ill. Sept. 8, 2009) (if a counselor does not respond, the inmate must still file the grievance with the grievance officer).  Therefore, Defendant Jenkins' motion for summary judgment is also granted.

IT IS THEREFORE ORDERED:

1) Defendants Prentice, Jenkins, and Gross's motion for summary judgment is granted pursuant to Federal Rule of Civil Procedure 56. [28]. The Clerk of the Court is directed to enter judgment in favor of Defendants and against Plaintiff. This case is terminated, with the parties to bear their own costs.

2) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(4).  A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *See also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an

opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective).   If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.

Entered this 7th day of April, 2020.


s/ James E. Shadid
_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE